FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

CLE~~~ ~~~ ~~~
ALEXA~~~~~~ ~~~~~A

|  |  |
|---|---|
| NEMET CHEVROLET LTD.<br>153-12 Hillside Avenue<br>Jamaica, NY 11423<br><br>and<br><br>THOMAS NEMET, d/b/a NEMET MOTORS,<br><br>        Plaintiffs,<br><br>    v.<br><br>CONSUMERAFFAIRS.COM, INC,<br>11350 Random Hills Road<br>Suite 800<br>Fairfax, VA 22030<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 1:08 CV 254<br>GBL/TCB |

## COMPLAINT

Plaintiffs, NEMET CHEVROLET LTD. and THOMAS NEMET d/b/a NEMET MOTORS (collectively, "Plaintiffs" or "Nemet") by and through their undersigned counsel, hereby bring their action against Defendant CONSUMERAFFAIRS.COM, INC. (the "Defendant" or "Consumeraffairs.com") for defamation, tortious interference with a business expectancy and violations of the Lanham Act.

## The Parties, Jurisdiction and Venue

1.      This is an action for injunctive and monetary relief based upon Defendant's defamatory and deceptive practices of preparing and publishing false, malicious and libelous articles of and concerning Plaintiffs' business.  Since at least January 20, 2000, including several times since April 2007; Defendant has published over the World Wide Web multiple unverified and false complaints about the Plaintiffs' business resulting in irreparable and continuous damage to the Plaintiffs.

2.      This Court pursuant to 15 U.S.C. § 1121(a) and diversity jurisdiction per 28 U.S.C. §§ 1331 and 1338(a).  This Court further has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367(a) in that the parties are citizens of different states and the amount of controversy exceeds $75,000, exclusive of interest and costs.

3.      Personal jurisdiction exists pursuant to Va. Code §§ 8.01-328 to -330, Virginia's long-arm statute.  The Defendant has engaged in business related to this matter in Virginia, Defendant maintains an office in Virginia, and through its website, advertises specifically to Virginia residents.

4.      Defendant conducted a significant amount of commercial activity in the Commonwealth and derives significant profit from the Commonwealth, including, but not limited to, posting advertisements by Virginia attorneys on its website and obtaining advertising revenue from Virginia residents.

5.      Defendant is also affiliated with a Virginia attorney whose offices are in Fairfax, Virginia.

6.      Venue exists pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events or omissions giving rise to the claims occurred in this District.

7.      At all material times, Plaintiff NEMET CHEVROLET LTD. was and remains a corporation duly organized under the laws of the State of New York, with its principal place of business at 153-12 Hillside Avenue, Jamaica, New York 11423.

8.      At all material times, Plaintiff THOMAS NEMET, d/b/a NEMET MOTORS was and remains a sole proprietorship doing business at 153-12 Hillside Avenue, Jamaica, New York 11423.

9.      At all material times, Defendant CONSUMERAFFAIRS.COM, INC., is a corporation duly organized in the state of California, doing business in Virginia, with its principal place of business in the County of Fairfax at 11350 Random Hills Road, Suite 800, Fairfax, Virginia 22030.

## FACTS COMMON TO ALL COUNTS

### Consumeraffairs.Com Website

10.     The Plaintiffs are a group of franchised automotive dealers that have been selling cars in the New York area for over 90 years. They have an excellent reputation in the community for fair dealing and truthfulness.

11.     Defendant operates in commerce under the guise of "consumer affairs" for the purpose of unlawfully diverting consumers and deriving a profit from misdirecting consumers.

12.     Upon information and belief, Defendant's website is not a "consumer affairs" website dedicated to helping consumers, as the website's name suggests, but is a ploy to sell online advertising and assist members of the plaintiffs' bar with soliciting potential clients.

13.     The consumers whose alleged complaints are posted on Defendant's website are actually confused about the nature and purpose of Defendant's website. None of the alleged complaints about Plaintiff posted on Defendant's website have been reported or acted upon by the

3

state agency actually responsible for addressing consumer complaints, the New York City Department of Consumer Affairs.  By contrast, numerous other automobile dealers have been cited for deceptive or misleading practices by the New York City Department of Consumer Affairs.

14.    Indeed, Defendant's founder and president, in sworn written testimony, admitted that Consumeraffairs.com's "sole source of income is advertising on the Website."  According to the sworn Affidavit of James R. Hood, the Website accepts advertising from "Google, TribalFusion, BURSTMedia, DoubleClick, FastClicks, and 24/7 RealMedia, among others."  This advertising is sold by placing lines of code on each website that correspond to the webpage content.  Thus "a page that mentions 'Ford' may get ads for Fords, other kinds of cars, and auto-related goods."  A true and correct copy of the Affidavit of James R. Hood is attached as **Exhibit A.**

15.    Moreover, according to the Consumeraffairs.com website, "[a]ll of the complaints submitted through our complaint form are reviewed by class action attorneys and hundreds of cases have been filed as a result."

16.    Indeed, one of Defendant's editors is a practicing plaintiffs' attorney from Fairfax, Virginia.

## Consumeraffairs.Com's Defamatory Articles

17.    Defendant's website recklessly published numerous false and defamatory statements against Plaintiffs' business, causing Plaintiffs' business reputation harm and causing loss of customers.

18.    According to Mr. Hood's sworn affidavit, Defendant's website solicits consumers to complete "complaint forms" in order to publish alleged complaints against a business on the website.  Mr. Hood and his staff "sort through the Complaint Forms, and omit any that contain libelous or obscene statements, as well as any that seem to stem from isolated incidents, rather than a pattern of behavior."

19.   Despite the fact that Defendant's staff allegedly reviewed the complaint forms, as demonstrated below, Defendant and its employees recklessly and/or maliciously allowed numerous false, libelous, and damaging statements against Plaintiffs' business to be posted on their website.

20.   In addition, Defendant's staff never contacted Plaintiffs for a response prior to publishing these defamatory and false statements and rebuffed Plaintiffs' efforts to share the accurate facts related to several complaints.

21.   On or about November 10, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs, containing the following:

**Renee of Woodside NY (11/10/07):**

I bought a 2004 Nissan Quest at NEMET last year. I actually saw the vehicle for $18,900 on the Internet. They claimed that the price was incorrect. I was there all day with my husband and my 3-year old son, mind you I was 9 months pregnant! When we finally saw the financial person, Lou, he was in a rush and so were we.

We went through the paperwork quickly because we were the only ones around. When seeing the bill, the price of the car was different $20000 and change, they added some Tires4Life and Drivecare both for thousands of dollars. This of course brought the price now to almost $27000. Lou told us we needed this so that the bank would accept me for a low interest rate. The monthly payment for about $500.

We told him we did not want it so he told us he would help subsidize for the first three months $100 per month and then bring down our monthly payments after the three months. He also told us that after the three months he would take off the Tires4Life and DriveCare because we wont need it.

It is now a year later. When we go to NEMET, we are told that Lou NO LONGER works there due to things like this. Why should we suffer for his lies ad misleading information? Becaus we paid over $1000 for Tires4LIfe, we tried getting new tires because the two right tires were damaged. It took 4 weeks of going back and forth physically and on the phone. Everyone gives you the run around

there.

Now I am stuck with a monthly payment of $500 and a car with plenty of negative equity. They sold me an overpriced car with lots of unnecessary extras. They verbally promised things that did not take place and the man who did no longer works there. NEMET does not want to take responsibility for Lou's actions. Instead they make it seem like they did not know what he was doing. This is a major burden in my finances which I did not plan or want.

22.     This post was made by Nemet customer Renee P. Williams of Woodside, New York. Several statements in his post are false. Plaintiffs' records demonstrate that the "Tires for Life" program does not cover physical damage to tires, such as the damage caused by a nail. Although the damage to Ms. Williams' tires was not covered by the "Tires for Life" program, in the interest of customer satisfaction, Ms. Williams' tires were replaced by the Plaintiffs at no charge. Finally, in her post, Ms. Williams states that the Plaintiffs were supposed to reduce her monthly payment for the first three months of her loan. However, she did not make this claim until a year after purchasing her vehicle and her statement about this was false.

23.     On or about October 29, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs, containing the following:

### William of Richmond Hill NY (10/29/07)

On Oct. 30, 2001 purchased a 2002 Nissan Altima (new) from NEMET a NISSAN dealer. I also Purchased a Primier Ultra protective plan (Warrantee) This warrantee was sold to me by the NEMET and was included in my car payment. Terms of service 84 months or 100,000 miles. My car presently has 74,000 miles.

On September 24, 2007, I took my car to NEMET Repair Center to check the car because it was making a rattling noise and black smoke was coming from the exhaust. On that day I was informed that my care engine problems and they were going to check to see what my warrantee covered. Later that day a representative from NEMET

Repairs informed me that the company that held the warrantee had gone bankrupt and I was not covered.

I have called NISSAN Customer Service for the last six week with no result. I received a document from US Bankrupty Court for the Northern District of Illinois on October 15th, which indicates that I am covered, however on Friday October 26th, I was informed that my policy was cancelled. I requested proof and they ask me call a number which has a recording regarding the bankrutcy.

I have been gettin the run around for approximatly 8 weeks. NEMET Repairs call me to remove my car otherwise they were going to charge me for storage. NEMET repairs quoted 8,000 dollars worth repairs.

24.      This post was made by Nemet customer William Casas Jr., of Richmond Hill, New York. These statements are false. Plaintiffs' records demonstrate, Mr. Casas' insurance policy was cancelled at his request.

25.      On or about the October 26, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning the Plaintiffs, containing the following:

Esther of Jamaica NY (10/26/07)

I went to buy a car. I was told that I had to get an extended warranty that is optional that cost $2500 along with a passive alarm system that is not installed on the vehicle for $1195. The price of the car was inflated and now I am stuck with a car loan for $28,500 for a car that is worth about 23,500.

I have not started the payments yet but I am now legally bound to a loan of $28,500 with monthly payments of close to $600.

26.      Upon information and belief, these posts were made by Nemet customer Esther Sauveur of Jamaica, New York. These statements are false. Plaintiffs' records demonstrate that Ms. Sauveur originally signed a valid, binding Retail Agreement with Plaintiffs and now suffers from "buyer's remorse." Plaintiffs' sales contracts clearly state that all sales are final.

27.    On or about the May 4, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning the Plaintiffs, which contains the following:

### Arthur of Melville NY (05/04/07)

We are offered a 2007 Nissan Murano Leather interior for 31,000 by Elway the sales manager. Offered was excepted, then we transfer insurance policy to the new Murano. They asked a $200.00 as downpayment and I was told that this downpayment fully refindable. At this point, I already spent there 8 hours.

However, with this great deal everything seemed fine at first until we start going over the finace paper until the person Seth who is the finance manager put some unwanted item on the invoice Such as Insurance ETCH PRO For $2999, Protection Plan $1999.00 which was never asked for nor told during the sale stage.

The price of the car goes up from 31000 to 38000 (without taxes yet). I still did not receive my downpayment of $200.00.

28.    Based upon the information provided in the post, Plaintiffs could not determine which customer, if any, this post pertained to. However, upon information and belief, these statements are untrue and defamatory. In addition, Defendant did not, and would not, provide Plaintiffs with enough information to determine the author of the post.

29.    On or about the April 30, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs, which contain the following:

### Thomas of Oakland Gardens NY (04/30/07)

04/28/2007 11:56 AM To Whom It May Concern This is a copy of email I sent to Nemet motors and Hyundai. I would like to inform why I feel as a NYC Fire Fighter I was burned by one of your

8

dealerships,Nemet Motors of Jamaica Queens NY..I have already filed a complaint with the local Better Business Bureau but see that Nemet has not responded to any of the other numerous complaints filed against them.

I had just bought a new 2007 Scion tc 6 months ago but decided I needed a bigger vehicle because of personal reasons. After doing extensive research I decided the Hyundai Tucson was what I wanted to buy. My wife and I both feel the salesman made promises he did not keep. My deal with him was that I was to receive a trade-in amount of $16500.00 towards the purchase of the Tucson and the price quoted was to include the $440.00 delivery charge. I knew this was a great deal for me so I went over it several times with the salesman. I put down a $1000.00 deposit to secure the deal and order the car.I left the dealership happy with the deal and looked forward to getting the car.

All of the good karma I felt disappeared when I went to pick up the new car.

The salesman informed me I was only going to get $15250.00 for my trade-in saying you still are getting great sales tax savings and also failed on his promised to include the $440.00 delivery charge in the price. When I balked at this I was told if I did not complete the deal I would lose my $1000.00 deposit.I feel I had no choice but to take the car costing me $1830.00 more than it should have. I complained of the treatment to a manager(Carlos) but he said their is nothing he could do.

I know its only my word against theirs since I have nothing in writing to prove my case, except the salesman's business card writing out $16500.00 for trade-in. Me and my wife know what was said.

As my wife said they are not like you when you promised to protect life and property as a firefighter your word was good and you for filled your promise. I just wanted you to know how Nemet motors treats firefighters in your name.

30.     Based upon the information provided in the post, Plaintiffs could not determine which customer, if any, this post pertained to.  However, upon information and belief, these statements were untrue and defamatory.  In addition, Defendant did not, and would not, provide Plaintiffs with enough information to determine the author of the post.

9

31.   On or about the April 11, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs, which contains the following:

Svetlana of Brooklyn NY (04/11/07):

I went to purchase a car from Nemet Motors after I saw what appeared to be a good deal in the Newspaper, boy was I wrong! I purchased a 2003 altima from them thinking I was getting a good deal. It took them a very long time to get the paper work ready. By the time they were done I was restless and my head hurt.

I sat down with the finance manager Sid and this is when he started making all kinds of promises. He rushed me through a whole bunch of paper saying that since it was so late (9:30 PM) I had to have extra warranties added on the car for me to be able to drive off that same day. He told me to call him the next day to get all the figures. I called the next day all the way until the night. This guy seems to never get a break because he was never able to answer my calls (ya right). He was avoiding me that whole day, so I was starting to get a little nervous because from the looks of the contract I would owe 25,000 for a 14,000 dollar car.

That night my father and me decided to drive to the dealership, Sid told me that everything was fine all the warranties will be taken off when I sign the final contact. He said my final contract was locked away and that I could come back the next day to sign it. When I got there the next day he typed up the contract in my face, which meant that he lied about it being locked away.

All the extras were still in the new contact, so I told him that I wasn't going to sign it and I didn't want the car. He told me I had no choice and that I had to keep all the warranties. I started crying in the office, so the GM Scott was called in. They promised to take off one of the many extended warranties that were added, but I knew that all they was take away some money from the amount owed and added it to the finance fee.

They made me feel like I had no choice but to take that offer because it was for a few more months which made my monthly payments more affordable, so I left with the new contract. Come to find out they never cancelled the first contract, so I'm being billed from both Nissan and M & T bank.

They have been telling me now for the past few weeks that they are fixing the problem and not to worry, but I am still showing an outstanding balance for both banks.

Not only that, I took my car to my mechanic to find out that the car was in a serious accident which the car appeared to have frame and bumper guard damage. Once again I had to make another trip to this dealership. When I got there the GM Scott told me that they would fix anything and then told his mechanics to put everything back together. He then told me that I can get a lawyer and in five years he will see if I ever get anything. I started crying again I front of my one and a half year old son.

Till this day nothing has been fixed with the car nor was the other loan voided. I don't know what to do; there is no way I can pay for two loans and if I don't my excellent credit will be destroyed. Emotionally this situation has taken a huge toll on me. I can not eat, sleep, or think straight. These people have ruined my life.

32.     This post was made by Nemet customer Svetlana Yusupova of Brooklyn, New York. These statements were false. As Plaintiffs' records demonstrate Ms. Yusupova recontracted with the Plaintiffs and voided her previous contract to lower her monthly payments. In addition, Plaintiffs agreed to purchase Ms. Yusupova's trade-in vehicle after 3 months for the full purchase price. Ms. Yusupova, however, never traded in her vehicle and instead sold the vehicle to another car dealership.

33.     On or about the April 3, 2007, and continuing to date, Defendant published and disseminated on the website consumeraffairs.com, and, upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs, which contains the following:

Louella of New York NY (04/03/07)

We were trying to lease a car. Unfortunately, we got too excited so they took advantage by adding a lot of extras to the car without informing us. These extras had my initials though they were not my handwriting. We were surprised when we first got the statement which states that we are PURCHASING it at $431.00 for 6 yrs which

amounts the car to be $30K when it was originally only $16,800.00. When we received it, we went back to tell them that we don't want to buy it, just lease. They passed us from one person to another then eventually said that they will do something about it. True enough, up to this day it still states the same amount. We tried to return the car as it is costing us too much but they don't want to and they were treating us without respect at all. They are very rude and we feel that we are so aggravated.

34.    This post was made by Nemet customer Louella E. Espinal of Richmond Hills, New York. These statements were false. Plaintiffs' records demonstrate that Ms. Espinal signed a valid, binding Retail Agreement with the Plaintiffs, and then attempted to back out of the contract. In addition, Ms. Espinal's allegations of forgery are untrue and defamatory.

35.    At the time of publication, Defendant published all of complaint described above with reckless and wanton disregard of whether they were false and untrue.

36.    As a result of the publications and the acts of Defendant, Plaintiffs have suffered public contempt, ridicule, disgrace and prejudice; have suffered great mental pain and anguish; and have suffered irreparable injury to their good name, business reputation, and social standing, and have lost the esteem and respect of their friends, acquaintances, business associates, and of the public generally.

37.    Defendant negligently or recklessly published the articles with the knowledge that the information in the articles was false and would cause prospective Nemet customers to not purchase vehicles from Nemet.

COUNT I
(Defamation)

38.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 37.

12

39.     Through the publication of false and misleading statements on its website, specifically including, but not limited to, the statements alleged in Paragraphs 21, 23, 25, 27, 29, 31 and 33, Defendant maliciously discredited the Plaintiffs' honesty, credit and business reputation.

40.     As discussed above, Defendant knew, or was reckless in not knowing, that the published statements about Plaintiffs' business were false.

41.     Defendant's false and misleading comments thus defamed Plaintiffs *per se* and caused harm to Plaintiffs' reputation and business.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and, against Defendant, issue injunctive relief and monetary relief in the amount of $5000,000.00, or in such greater amount to be proven at trial, punitive damages in the amount of $1,500,000.00, and pre-judgment interest, and grant such other and further relief that the Court may deem appropriate.

## COUNT II
### (Tortious Interference With A Business Expectancy)

42.     Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 41.

43.     Defendant knew, or should have known that prospective Nemet customers, when searching for information on the Plaintiffs' business, would view Defendant's false statements relating to the Plaintiffs' business on Defendant's Consumeraffairs.com website.

44.     Defendant intentionally and/or recklessly disregarded this knowledge and improperly posted false and misleading information about the Plaintiffs on its website.

45.     Defendant's false and misleading articles caused potential Nemet customers not to contract with Plaintiffs, resulting in monetary damages to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and, against the Defendant, issue injunctive relief and monetary relief in the amount of $500,000.00, or in such greater amount to be proven at trial, punitive damages in the amount of $1,500,000.00,

and pre-judgment interest, and grant such other and further relief that the Court may deem appropriate.

## COUNT III
### (Violation of Section 43(a)(1)(A) Of The Lanham Act)

46.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 45.

47.    Defendant operates in commerce under the guise of "consumer affairs" for the purpose of unlawfully diverting consumers and deriving a profit from misdirecting said consumers.

48.    Defendant's practice of using in commerce the name "consumer affairs" cause or are likely to cause confusion, to cause mistake, or to deceive as to its affiliation, connection, or association with a State, Federal, or other organization.  Defendant's practices of using in commerce the name "consumer affairs" cause or are likely to cause confusion, to cause mistake or to deceive as to the origin, sponsorship, or approval of Defendant's services or commercial activities.

49.    As a result of the foregoing, Plaintiffs are or are likely to be damaged by such acts.

50.    Therefore, Defendant's acts or practices, as set out above, are confusing, deceptive, or misleading and violate section 43 (a) (1) (A) of the Lanham Act, 15 U.S.C. § 1125 (a) (1) (A).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and, against the Defendant, issue injunctive relief and monetary relief in the amount of $500,000.00, or in such greater amount to be proven at trial, punitive damages in the amount of $1,500,000.00, and pre-judgment interest, and grant such other and further relief that the Court may deem appropriate.

## COUNT IV
### (Violation of Section 43(a)(1)(B) Of The Lanham Act)

51.    Plaintiffs repeat and incorporate by reference the allegations set forth in paragraphs 1 through 50.

52.    Defendant's practices of using in commercial advertising or promoting the name "consumer affairs" misrepresent or are likely to misrepresent the nature, characteristics, or quality of its services or commercial activities.

53.    Defendant's misleading promotion of the "consumer affairs" name is likely to influence the purchasing decision and deceive consumers, including Plaintiffs' customers.

54.    Defendant placed its false and misleading statements into interstate commerce by publishing on the World Wide Web.

55.    As a result of the foregoing, Plaintiffs are likely to be damaged by the misrepresentation.

56.    Therefore, Defendant's acts or practices, as set out above, are confusing, deceptive, or misleading and violate section 43 (a) (1) (B) of the Lanham Act, 15 U.S.C. § 1125 (a) (1) (B).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and, against Defendant, issue injunctive relief and monetary relief in the amount of $500,000.00, or in such greater amount to be proven at trial, punitive damages in the amount of $1,500,000.00, and pre-judgment interest, and grant such other and further relief that the Court may deem appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, by and through their undersigned counsel, respectfully prays that judgment be entered in their favor of the foregoing Complaint against Defendant, and that this Court in addition:

a.    Award Plaintiffs such monetary relief monetary relief in the amount of $500,000.00, or in such greater amount to be proven at trial, punitive damages in the amount of $1,500,000.00, and pre-judgment interest and costs, and grant such other and further relief that the Court may deem appropriate.

b.      Permanently enjoin Defendant from violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

c.      Permanently enjoin Defendant from defaming the Plaintiffs by causing untrue and misleading articles to be posted on its website;

d.      Award all relief that the Court finds necessary to remedy Defendant's continuing violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a), and common law defamation and tortuous interference with a business expectancy claims, including, but not limited to, redress and disgorgement of Defendant's unjust gains;

e.      Award Plaintiffs their costs and attorneys' fees incurred in this matter.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.

Respectfully submitted,

Benjamin G. Chew (VSB # 29113)
Andrew M. Friedman (Pro Hac vice
application pending)
Jacob D. Krawitz
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6015
Facsimile: (202) 457-6315
Email: bchew@pattonboggs.com

Dated: March 17, 2008                              Counsel for the Plaintiffs

16