IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| NEMET CHEVROLET LTD., *et al.* | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:08cv254 |
| CONSUMERAFFAIRS.COM, INC. | |
| Defendants. | |

## **BRIEF IN SUPPORT OF MOTION TO DISMISS OR STRIKE COMPLAINT**

### INTRODUCTION

Plaintiffs Nemet Chevrolet Ltd. ("Nemet Chevrolet") and Thomas Nemet d/b/a Nemet Motors ("Nemet Motors") filed suit against Defendant ConsumerAffairs.com, Inc. ("ConsumerAffairs") alleging Virginia common law claims for defamation (Count I) and tortious interference with business expectancy (Count II) and unfair competition claims under the Lanham Act, 15 U.S.C. §1051, *et seq.* (Counts III, alleging false designation of origin, and IV, alleging false advertising) in connection with ConsumerAffairs's operation of a consumer complaint website (the "ConsumerAffairs Website").  ConsumerAffairs has filed the instant motion to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that:  (1) Plaintiffs' defamation and tortious interference claims are barred by the federal immunity granted to website operators under Section 230 of the Communications Decency Act of 1996; (2) Plaintiffs seek punitive damages for the alleged defamation and tortious interference which far exceed Virginia's statutory cap on such damages; (3) Plaintiffs do not have a valid, protectable trademark which has been imitated by

ConsumerAffairs, as is required to maintain an unfair competition claim under the Lanham Act; and (4) Plaintiffs do not have standing to assert a false advertising claim because neither is a competitor of ConsumerAffairs.

Specifically, Plaintiffs allege that ConsumerAffairs operates the ConsumerAffairs Website on which third-parties are encouraged to post their experiences purchasing products and services from particular companies. (Compl. ¶¶ 12-14). Over the course of several months, third-party users of the ConsumerAffairs Website posted seven "articles" about the Plaintiffs, who are alleged to be automobile dealers in New York, which Plaintiffs allege to be defamatory and likely to cause potential customers to decide not to conduct business with the Plaintiffs. (Compl. ¶¶ 17-34). Plaintiffs seek to hold ConsumerAffairs liable for the allegedly defamatory content of these articles, in blatant disregard of the broad federal immunity afforded to ConsumerAffairs under Section 230 of the Communications Decency Act. Plaintiffs also seek damages for ConsumerAffairs's use of the term "consumer affairs," to which Plaintiffs have no rights whatsoever. Under the circumstances, the Complaint must be dismissed, in its entirely, with prejudice.

## ARGUMENT

**I.   COUNT I OF THE COMPLAINT MUST BE DISMISSED OR STRICKEN.**

    **A.   The defamation claim alleged in Count I is barred by Section 230 of the Communications Decency Act.**

Section 230 of the Communications Decency Act of 1996 (the "CDA") provides that "[n]o provider or user of an interactive computer service[1] shall be treated as the publisher or

---

[1] The CDA defines "interactive computer service" ("ICS") as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a

speaker of any information provided by another information content provider."[2] 47 U.S.C. § 230(c)(1). It further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

The United States Circuit Court of Appeals for the Fourth Circuit was the first appellate court to interpret Section 230 and concluded that

> § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content-are barred.

Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). Here, there can be no doubt that Section 230 bars the defamation claim alleged in Count I of the Complaint.

### 1. ConsumerAffairs.com is a "provider or user of an interactive computer service" under the Communications Decency Act.

ConsumerAffairs.com benefits from the federal immunity provided by Section 230 because it is "a provider or user of an interactive computer service." See 47 U.S.C. § 230(c)(1). Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.

---

service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

[2] "Information content provider" ("ICP") is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other" ICS. 47 U.S.C. § 230(f)(3).

§ 230(f)(2). Courts construing Section 230(f)(2) have recognized that this definition is extremely broad and includes a wide range of services, including websites that function "as an intermediary by providing a forum for the exchange of information between third party users." Doe v. MySpace, Inc., 474 F.Supp.2d 843, 849 (W.D.Tex.2007) (holding that social networking site MySpace.com is an "interactive computer service"); Doe v. SexSearch.com, 502 F.Supp. 2d 719, 724 (N.D. Ohio 2007). See, e.g., Carafano v. Metrosplash.com, Inc., 207 F.Supp.2d 1055, 1065-1066 (C.D.Cal.2002) (holding that online dating service Matchmaker.com is a website operator qualifying as a provider of an "interactive computer service"), aff'd on other grounds, 339 F.3d 1119 (9th Cir.2003); Gentry v. eBay, Inc., 99 Cal.App.4th 816, 831 & n. 7, 121 Cal.Rptr.2d 703 (2002) (holding that an online auction website is an "interactive computer service"); Schneider v. Amazon.com, 108 Wash.App. 454, 31 P.3d 37, 40-41 (2001) (holding that online book seller Amazon.com is an "interactive computer service"); Barrett v. Clark, 2001 WL 881259 at *9 (Cal.Sup.Ct.2001) (holding that an Internet newsgroup is an "interactive computer service"); Schneider v. Amazon.com, 108 Wash.App. 454, 31 P.3d 37, 40-41 (Wash.App.2001).

The Complaint alleges that ConsumerAffairs operates a website through which third-party consumers exchange information about their experiences buying products or services from particular companies. (Compl. ¶¶ 11 & 18). Accordingly, ConsumerAffairs acts as a "provider . . . of an interactive computer service" and is entitled to the federal immunity offered by Section 230. See, e.g., Global Royalties, Ltd. v. Xcentric Ventures, LLC, 2008 WL 565102, *1-2 (D. Ariz. 2008) (applying Section 230 immunity to notorious consumer complaint website www.ripoffreport.com); Whitney Information Network, Inc. v. Xcentric Ventures, LLC, 2008

WL 450095, 8 (M.D. Fla. 2008) (in which the plaintiff conceded that the operator of www.ripoffreport.com was a "provider . . . of an interactive computer service").

> **2.  As a matter of law, ConsumerAffairs is immune from claims which treat it as the "publisher" of allegedly defamatory statements, like those alleged in the Complaint, which originate with third-party users of the ConsumerAffairs Website.**

All of the statements upon which Plaintiffs' defamation claim is based originated with third-party users of the ConsumerAffairs Website. Accordingly, Section 230 bars any defamation claim against ConsumerAffairs for publishing or distributing those statements. Zeran, 129 F.3d at 331-34.

With the few exceptions enumerated in the statute and inapplicable here, the immunity provided by Section 230 is absolute where suit is brought against the interactive computer service provider for "information provided by another information content provider." 47 U.S.C. § 230(c)(1). In this context, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of [the subject] information." 47 U.S.C. § 230(f)(3). As alleged in the Complaint, all of the information upon which Plaintiffs' defamation claim is based was created and developed solely by third-party users of the ConsumerAffairs Website.

Plaintiff alleges harm resulting from seven individual posts made to the ConsumerAffairs Website. In each instance, the information was created, developed, and posted by a third-party user of the ConsumerAffairs Website and the Complaint identifies each of these individual "information content providers." (Compl. ¶¶ 21-34 (alleging that subject posts were written by Renee P. Williams of Woodside, New York; William Casas Jr. of Richmond Hill, New York; Esther Sauveur of Jamaica, New York; "Arthur" of Melville, New York; "Thomas" of Oakland

5

Gardens, New York; Svetlana Yusupova of Brooklyn, New York; and Louelle E. Espinal of Richmond Hills, New York). The Complaint does not, and cannot, allege that ConsumerAffairs played any part in creating or developing the information posted by these third-parties. In fact, the Complaint makes clear that the defamation claim is based solely on the fact that ConsumerAffairs "published" these allegedly defamatory statements. (Compl. ¶¶ 17, 35-37 & 39-41). Accordingly, Section 230 bars the Plaintiffs' defamation claim against ConsumerAffairs and Count I of the Complaint must be dismissed, with prejudice.

This result is not in any way altered by an allegation that ConsumerAffairs selected the posts which would be published or altered or edited those posts. These activities (the selection and editing of content) are the traditional functions of a publisher; Section 230 was specifically designed to protect service providers, like ConsumerAffairs, from liability associated with exercising these functions. Zeran, 129 F.3d at 330.

### B.    Counts I seeks punitive damages in excess of the applicable statutory cap on such relief.

Count I of the Complaint purport to set forth causes of action, under the common law of Virginia, for defamation. This Count seeks, *inter alia*, punitive damages in the amount of $1,500,000 (Compl. at 12-13).

Since Plaintiffs may only bring the state law claim alleged in Count I under the laws of the Commonwealth of Virginia, Virginia's statutory cap for punitive damages applies to their recovery. See, e.g., PBM Products, Inc. v. Mead Johnson & Co., 204 F.R.D. 71, 74 (E.D.Va. 2001). At present, Virginia caps punitive damages at $350,000. Va. Code Ann. § 8.01-38.1 (Michie 2007 Repl. Vol.). The Plaintiff's seek punitive damages of nearly four times the statutory limit; accordingly, their claim for punitive damages under Count I of the Complaint

must be dismissed or stricken.  See, e.g., Vaile v. Willick, 2008 WL 204477, *6 (W.D. Va. 2008) (striking punitive damages claim in excess of the statutory cap); Worley v. Kia Motors American, Inc., 2001 WL 1517158, *1 (W.D. Va. 2001) (holding that "the better practice is to strike any claim for more than the amount of an applicable statutory cap").

**II.    COUNT II OF THE COMPLAINT MUST BE DISMISSED OR STRICKEN.**

    **A.    The tortious interference with business expectancy claim alleged in Count II is barred by Section 230 of the Communications Decency Act.**

The federal immunity offered by Section 230 also bars the tortious interference with business expectancy claim asserted in Count II of the Complaint.  Like the defamation claim in Count I, the Plaintiffs' tortious interference claim is wholly based upon the publication of allegedly defamatory statements by ConsumerAffairs.  (Compl. ¶¶ 43-45).  Like the defamation claim, Plaintiff's tortious interference claim is also barred by Section 230.  Corbis Corp. v. Amazon.com, Inc., 351 F.Supp.2d 1090, 1117-18 (W.D. Wash. 2004) (holding that plaintiff's tortious interference with business relationships claim was barred by Section 230).  See also Argument, § I(A), supra.

    **B.    Count II seeks punitive damages in excess of the applicable statutory cap on such relief.**

Like Count I, Count II of the Complaint seeks punitive damages in the amount of $1,500,000.00 (Compl. at 13-14).  Since the claims set forth in Count II are brought under Virginia law, Virginia's statutory cap of $350,000 on punitive damages applies.  Va. Code Ann. § 8.01-38.1.  Accordingly, the claim for punitive damages under Count II of the Complaint must be dismissed or stricken.  See, Argument, § I(B), supra.

**III.    COUNTS III AND IV OF THE COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Counts III and IV of the Complaint purport to allege unfair competition claims (for false designation of origin and false advertising, respectively) under Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)) but Plaintiffs fail to state a cause of action in either count. Section 43(a)(1) of the Lanham Act protects a company from having its trademark, symbols, or names used in false advertising or deceptive product promotion, and prevents the use of a mark to create the impression of an affiliating connection or association between the mark's owner and the goods or services of another. Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 124 (4th Cir. 1990); Scotts Co. v. United Industries Corp., 315 F.3d 264 (4th Cir. 2002). The Act "provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." Advanced Resources Internat'l, Inc. v. Tri-Star Petroleum Co., 4 F.3d 327, 333 (4th Cir. 1993) (quoting Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198, 105 S.Ct. 658, 663 (1985)).

Section 43(a)(1)(A) of the Lanham Act protects against false designation of origin and states,

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Count III of the Complaint purports to allege a cause of action under Section 43(a)(1)(A).

Section 43(a)(1)(B) of the Lanham Act protects against false advertising and states,

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1). Count IV of the Complaint purports to allege a cause of action under Section 43(a)(1)(B).

The typical Section 43(a) claim is brought by a plaintiff who is in competition with the defendant, and charges the defendant with using a mark, a brand name, a word, a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape, or something else intended to remind the consumer of the brand so similar to that of the plaintiff that the public may be confused as to the source of the good or service. Advanced Resources, 4 F.3d at 334. Some courts have expanded the scope of the Lanham Act by permitting claims by plaintiffs who are not in commercial competition with the defendant and giving a broad interpretation to the concept of a "mark." Id. Even where the scope of the Lanham Act has been expanded in this way, courts require that a plaintiff bringing a claim under Section 43(a) be a commercial entity[3] who can "demonstrate that it has a valid, protectable trademark and that the

---

[3] Consumers do not have standing to sue under Section 43(a) of the Lanham Act. E.g. Made in the USA Foundation v. Phillips Food, Inc., 365 F.3d 278, 281 (4th Cir. 2004).

defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922 (4th Cir.1995).

Here, Plaintiffs have no interest that is protectable under the Lanham Act and have no standing to assert the claims alleged.  Knowing that their defamation and tortious interference claims are barred by Section 230, Plaintiffs have made a meritless attempt to plead some form of intellectual property claim which might not be barred.  In doing so, they have merely mislabeled claims that are based upon allegedly defamatory publication by a website operator.  Though Plaintiffs have attempted to bypass Section 230 immunity, the instant case does not give rise to any valid causes of action under the Lanham Act.

**A.   Plaintiffs have not, and cannot, plead that they have a "mark" and that ConsumerAffairs's "use of a colorable imitation of the [mark] is likely to cause confusion among consumers," as is required to state a claim under Section 43(a) of the Lanham Act.**

To recover under Section 43(a) of the Lanham Act, a plaintiff must demonstrate that:  (1) it has a valid, protectable trademark; and (2) the defendant's "use of a colorable imitation of the trademark is likely to cause confusion among consumers."  Id.; Cardservice International, Inc. v. McGee, 950 F.Supp. 737, 740 (E.D. Va. 1997).  Here, Plaintiffs have failed to plead either of these elements and the Complaint demonstrates that, as a matter of law, Plaintiffs cannot state a claim upon which relief may be granted under Counts III or IV of the Complaint.

Counts III and IV are based solely upon ConsumerAffairs's use of the term "consumer affairs" in conjunction with the ConsumerAffairs Website.  (Compl. ¶¶ 47-49 & 52-53). Plaintiffs do not allege that this term is a "mark" and further do not, and cannot, allege that the term is a mark owned by the Plaintiffs.  Plaintiffs do not allege that consumers associate the term "consumer affairs" with the Plaintiffs but instead affirmatively allege that consumers associate

the term with a vaguely described group of third-parties consisting of "State, Federal, or other organization[s]." (Compl. ¶ 48). Thus, it is clear that Plaintiffs have no valid, protectable trademark of which any "colorable imitation" has been used by ConsumerAffairs; Plaintiffs cannot, therefore, maintain any cause of action under Section 43(a) and Counts III and IV of the Complaint must be dismissed.

>   B.   **Plaintiffs are not competitors of ConsumerAffairs and, therefore, lack standing to bring the false advertising claim alleged in Count IV.**

The majority of circuits who have addressed the issue "have held, categorically, that false advertising claims not involving misuse of a trademark are actionable only 'when brought by competitors of the wrongdoer.'" American Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103-4 (8th Cir. 2006) (quoting Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1047, 122 Led.2d 355 (1993)); accord Telecom Intern. America, Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001); Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir.), cert. denied, 516 U.S. 920, 116 S.Ct. 314, 133 Led.2d 217 (1995); L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993). Two other circuits "have adopted a less categorical multi-factor test, based on the Supreme Court's test for antitrust standing, that focuses judicial enforcement of the Lanham Act on the protection of commercial interests and the prevention of competitive harm." Id. (citing Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233-35 (3d Cir. 1998); Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 562-64 (5th Cir.), cert. denied, 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001). Under either approach, Plaintiffs lack standing to assert the false advertising claim they have attempted to plead in Counts IV of the Complaint.

Plaintiffs do not, and cannot, allege that they are competitors of ConsumerAffairs. As alleged, ConsumerAffairs is the operator of a consumer complaint website. (Compl. ¶¶ 1 & 11-12). Nemet Chevrolet and Nemet Motors are alleged to be "a group of franchised automobile dealers that have been selling cars in the New York area for over 90 years." (Compl. ¶ 10). ConsumerAffairs does not sell cars and the Plaintiffs do not operate any consumer complaint websites. Therefore, the Plaintiffs are not competitors of ConsumerAffairs and cannot maintain an unfair competition claim against Consumer Affairs under the categorical approach followed by the Second, Seventh, Ninth, and Tenth Circuits.

Even the minority approach, applied only by the Third and Fifth Circuits, reveals that Plaintiffs lack standing to bring the unfair competition claims alleged in Counts III and IV. Under this approach, the court considers five factors in determining whether plaintiff is a proper party to bring the unfair competition action: (1) the nature of the plaintiff's alleged injury (is the injury of a type Congress sought to redress in enacting the Lanham Act); (2) the directness or indirectness of the alleged injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages. Conte Bros., 165 F.3d at 233. In the instant case, consideration of the second, third, and fourth factors lead one to the inevitable conclusion that Plaintiffs lack standing to assert false advertising claims under Section 43(a) of the Lanham Act.

The only source of harm to the Plaintiffs described in the Complaint is the potential loss of customers, good will, and reputation which may result from the public's review of the complaints created by the Plaintiffs' former customers and published on the Consumer Affairs

Website. (Compl. ¶¶ 36). The potential harm has nothing at all to do with ConsumerAffairs's use of the term "consumer affairs," which is the basis of the unfair competition claims set forth in Counts III and IV.

Assuming, *arguendo*, that ConsumerAffairs's use of the term "consumer affairs" has the potential to confuse consumers, leading them to believe that ConsumerAffairs is affiliated with some governmental agency responsible for addressing consumer complaints (as alleged in paragraphs 48 & 52-53), the parties most likely to be directly affected by such conduct are those governmental agencies responsible for addressing such complaints. Where, as here, there exists an "identifiable class of persons whose self interest would normally motivate them to vindicate the public interest . . . [this] diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." Id. (quoting Associated General Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 452, 103 S.Ct. 897, 897, 74 L.Ed.2d 723 (1983)). Moreover, the alleged harm suffered by Plaintiffs is entirely speculative, based upon a guess as to how consumers have reacted to the Consumer Affairs Website. Even under the minority standing analysis, Plaintiffs lack standing to assert the claim alleged in Count IV. Accordingly, this count must be dismissed, with prejudice.

## CONCLUSION

The Complaint must be dismissed in its entirety, with prejudice. Counts I and II of the Complaint purport to allege Virginia common law claims for defamation and tortious interference with business expectancy, respectively. However, both claims are plainly barred by Section 230 of the Communications Decency Act of 1996; moreover, each of these claims seeks punitive damages which far exceed Virginia's cap on such relief. As such, Counts I and II must

be dismissed, with prejudice, or, in the alternative, the claim for punitive damages exceeding the cap must be stricken.

Counts III and IV of the Complaint purport to allege unfair competition claims (for false designation of origin and false advertising, respectively) under the Lanham Act. However, neither count states a cause of action upon which relief may be granted because the Plaintiffs have no valid, protectable trademark of which any "colorable imitation" has been used by ConsumerAffairs; moreover, Plaintiffs lack standing to assert a false advertising claim against ConsumerAffairs because the parties are not in competition with one another. Accordingly, Counts III and IV must be dismissed, with prejudice.

In consideration of the foregoing, Defendant ConsumerAffairs.com, Inc. respectfully moves this Court to dismiss or strike the Complaint and grant it such other and further relief as the Court deems just and appropriate.

    Respectfully Submitted,

    CONSUMERAFFAIRS.COM, INC.
    By counsel

                /s/
Jonathan D. Frieden, Esquire (VSB No. 41452)
Sean P. Roche, Esquire (VSB No. 71412)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia  22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of April, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following::

                Benjamin G. Chew, Esquire
              Andrew M. Friedman, Esquire
              Jacob D. Krawitz, Esquire
              PATTON BOGGS LLP
              2550 M Street, NW
              Washington, DC 20037
              bchew@pattonboggs.com

                /s/
        Jonathan D. Frieden, Esquire (VSB No. 41452)
        Sean P. Roche, Esquire (VSB No. 71412)
        ODIN, FELDMAN & PITTLEMAN, P.C.
        9302 Lee Highway, Suite 1100
        Fairfax, Virginia  22031
        (703) 218-2100
        (703) 218-2160 (facsimile)
        jonathan.frieden@ofplaw.com
        Counsel for Defendant

#935165v1  Brief in Support of Motion to Dismiss or Strike Complaint  37066/00001