

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEMET CHEVROLET, LTD; THOMAS NEMET, d/b/a/ Nemet Motors,

    *Plaintiffs-Appellants,*

v.

CONSUMERAFFAIRS.COM, INCORPORATED,

    *Defendant-Appellee.*

No. 08-2097

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:08-cv-00254-GBL-TCB)

Argued: September 23, 2009

Decided: December 29, 2009

Before KING and AGEE, Circuit Judges,
and James P. JONES, Chief United States District Judge for
the Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Agee wrote the majority opinion, in which Judge King joined. Judge Jones wrote a separate opinion concurring in part and dissenting in part.

---

**COUNSEL**

ARGUED: Andrew Friedman, PATTON BOGGS, LLP, Washington, D.C., for Appellants. Jonathan David Frieden,

ODIN, FELDMAN & PITTLEMAN, PC, Fairfax, Virginia, for Appellee. **ON BRIEF**: Benjamin G. Chew, John C. Hilton, PATTON BOGGS, LLP, Washington, D.C., for Appellants. Stephen A. Cobb, ODIN, FELDMAN & PITTLEMAN, PC, Fairfax, Virginia, for Appellee.

## OPINION

AGEE, Circuit Judge:

Consumeraffairs.com, Incorporated ("Consumeraffairs.com") operates a website that allows consumers to comment on the quality of businesses, goods, and services. The present suit concerns various posts on this website relating to automobiles sold or serviced by Nemet Chevrolet, Ltd. ("Nemet"). Viewing certain of these postings as false and harmful to its reputation, Nemet brought suit against Consumeraffairs.com in the United States District Court for the Eastern District of Virginia for defamation and tortious interference with a business expectancy.[1] Consumeraffairs.com moved to dismiss these claims, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as barred by § 230 of the Communications Decency Act of 1996 ("CDA"), which precludes plaintiffs from holding interactive computer service providers liable for the publication of information created and developed by others.[2] *See* 47 U.S.C. § 230(c)(1), (e)(3), & (f)(3); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

---

[1] The district court exercised jurisdiction over Nemet's state-law claims pursuant to 28 U.S.C. §§ 1332 & 1367(a). In the district court, Nemet also pled several federal claims under the Lanham Act, which are not at issue in this appeal. *See* 15 U.S.C. § 1125.

[2] An "interactive computer service" is defined in the CDA as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

The district court granted the Rule 12(b)(6) motion, but gave Nemet permission to file an amended complaint. Upon filing of the amended complaint, Consumeraffairs.com again filed a Rule 12(b)(6) motion to dismiss based on § 230 of the CDA. The district court granted the motion to dismiss, stating that "the allegations contained in the Amended Complaint [d]o not sufficiently set forth a claim asserting that [Consumeraffairs.com] authored the content at issue. Furthermore, the allegations are insufficient to take this matter outside of the protection of the Communications Decency Act." Joint Appendix ("J.A.") at 303.

Nemet timely appealed the judgment of the district court and we have jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, we affirm the judgment of the district court.[3]

I.

Nemet's claims, as pled in its amended complaint, are based on twenty specific posts on the Consumeraffairs.com website. As to these twenty posts, Nemet argues its pleading was sufficient to withstand a Rule 12(b)(6) motion because the facts pled, viewed under the proper standard at this stage of the proceeding, show that Consumeraffairs.com was an "information content provider" under § 230(f)(3) of the CDA and, therefore, not entitled to CDA immunity. Further, Nemet contends that because its factual allegations are sufficient to negate the immunity bar claimed by Consumeraffairs.com, it should be entitled to discovery before any ruling on immunity would be appropriate as, for instance, under Rule 56 for summary judgment.

Before we discuss the specific language Nemet relies upon from its amended complaint, it is appropriate to briefly set forth the standard of review, the statutory and case-law

---

[3] Nemet does not challenge the dismissal of its original complaint. Consequently, we consider only Nemet's amended complaint in this appeal.

parameters of immunity under the CDA, and the clarification of pleading standards recently addressed by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

## II.

Our review of the district court's ruling on a motion to dismiss is de novo. *See Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307 (4th Cir. 2007). "Because the district court granted Defendants' motion to dismiss, our review is de novo. Like the district court, we must assume all [well-pled facts] to be true." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quotations and emphasis omitted). We also, like the district court, draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[B]ut we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations omitted).

## III.

Recognizing that the Internet provided a valuable and increasingly utilized source of information for citizens, Congress carved out a sphere of immunity from state lawsuits for providers of interactive computer services to preserve the "vibrant and competitive free market" of ideas on the Internet. 47 U.S.C.§ 230(b)(2); *see also Zeran*, 129 F.3d at 330. The CDA bars the institution of a "cause of action" or imposition of "liability" under "any State or local law that is inconsistent" with the terms of § 230. 47 U.S.C. § 230(e)(3). As relevant here, § 230 prohibits a "provider or user of an interactive computer service" from being held responsible "as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). Assuming a person meets the statutory definition of an "interactive computer service provider," the scope of § 230 immunity turns on whether that

person's actions also make it an "information content provider." The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3).

Taken together, these provisions bar state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties. *See Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007). State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008; *Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008); *Zeran*, 129 F.3d at 330-31.

To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope.[4] *See Lycos*, 478 F.3d at 418; *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Zeran*, 129 F.3d at 331. This Cir-

---

[4]There is some disagreement as to whether the statutory bar under § 230 is an immunity or some less particular form of defense for an interactive computer service provider. The Seventh Circuit, for example, prefers to read "§ 230(c)(1) as a definitional clause rather than as an immunity from liability." *Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir. 2003); *see also Craigslist, Inc.*, 519 F.3d at 669. Of whatever academic interest that distinction may be, our Circuit clearly views the § 230 provision as an immunity: "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran*, 129 F.3d at 330.

cuit has recognized the "obvious chilling effect" the "specter of tort liability" would otherwise pose to interactive computer service providers given the "prolific" nature of speech on the Internet. *Zeran*, 129 F.3d at 331. Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process. As we have often explained in the qualified immunity context, "immunity is an *immunity from suit* rather than a mere defense to liability" and "it is effectively lost if a case is erroneously permitted to go to trial." *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002) (quotations omitted) (emphasis in original). We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from "ultimate liability," but also from "having to fight costly and protracted legal battles." *Roommates.com*, 521 F.3d at 1175.

Nemet does not dispute that Consumeraffairs.com is an interactive computer service provider under the CDA. What Nemet contends is that Consumeraffairs.com is also an information content provider as to the twenty posts and, therefore, cannot qualify for § 230 immunity. In other words, Nemet's argument is that its amended complaint pleads sufficient facts to show Consumeraffairs.com is an information content provider for purposes of denying statutory immunity to Consumeraffairs.com at this stage in the proceedings.

Our analysis of the sufficiency of Nemet's pleading is informed by the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).[5] Iqbal, a former high-interest detainee taken into custody after the attacks of September 11, 2001, brought a *Bivens* suit against several high-ranking executive branch officials, alleging infringements of his First and

---

[5] Although the district court dismissed Nemet's amended complaint before the Supreme Court rendered its decision in *Iqbal*, we "apply the law as it exists at the time of our decision." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 836 n.3 (4th Cir. 1992).

Fifth Amendment rights. *See Iqbal*, 129 S. Ct. at 1943-44. He pled, among other things, that the defendant executive branch officials adopted a policy of labeling Arab Muslim men as high-interest detainees and subjecting them to "harsh conditions of confinement" based solely on their "religion, race, and/or national origin." *Id.* at 1951.

Because these allegations were "conclusory" restatements of the "elements of a constitutional discrimination claim," the Supreme Court refused to accord them an assumption of truth for purposes of weighing a motion to dismiss under Rule 12(b)(6). *Id.* The Court also rejected the sufficiency of Iqbal's supporting factual allegations, including his claim that the federal government "detained thousands of Arab Muslim men." *Id.* Given the "more likely explanation[ ]" for these arrests, *i.e.*, the Government's legitimate investigation into the September 11th attacks, the Court concluded that Iqbal's factual allegations did "not plausibly establish" the "purposeful, invidious discrimination" he asked it to infer. *Id.* at 1951-52.

As noted above, in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint. *See id.* at 1950-51; *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). But we also conclude from the analysis in *Iqbal* that legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. *See Iqbal*, 129 S. Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009); *see also Iqbal*, 129 S. Ct. at 1951-52.

Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausi-

bility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950. Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," *id.* at 1949, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 1951 (quotations omitted).

We must determine, in a post-*Iqbal* context, whether the facts pled by Nemet, as to the application of CDA immunity, make its claim that Consumeraffairs.com is an information content provider merely possible or whether Nemet has nudged that claim "across the line from conceivable to plausible." *Id.* at 1951 (quoting *Twombly*, 550 U.S. at 570).

IV.

Following the example set by the Supreme Court in *Iqbal* we begin our analysis by "identifying the allegations" of the amended complaint that are either extraneous or "not entitled to the assumption of truth." 129 S. Ct. at 1951. We then proceed to determine the plausibility of the factual allegations of Nemet's amended complaint pertaining to Consumeraffairs.com's responsibility for the creation or development of the comments at issue.

### A. Facts Alleged Common to All Posts

In the amended complaint, Nemet recited the specific language from each customer about his or her automobile complaint for each of the twenty posts it claimed were defamatory. Then, Nemet pled as to each of the posts as follows:

> Upon information and belief, Defendant participated in the preparation of this complaint by soliciting the complaint, steering the complaint into a specific category designed to attract attention by consumer class action lawyers, contacting the consumer to ask questions about the complaint and to help her draft or revise her complaint, and promising the consumer that she could obtain some financial recovery by joining a class action lawsuit. Defendant is therefore responsible, in whole or in part, for developing the substance and content of the false complaint . . . about the Plaintiffs.

*See, e.g.*, J.A. at 62. Nemet argues the foregoing (the "Development Paragraph") pleads facts sufficient under § 230(f)(3) to show Consumeraffairs.com is "responsible, in whole or in part, for the creation or development" of the posts so as to be a non-immune information content provider. 47 U.S.C. § 230(f)(3). In short, Nemet argues the language in the Development Paragraph shows Consumeraffairs.com's culpability as an information content provider either through (1) the "structure and design of its website," or (2) its participation in "the preparation of" consumer complaints: *i.e.*, that Consumeraffairs.com "solicit[ed]" its customers' complaints, "steered" them into "specific categor[ies] designed to attract attention by consumer class action lawyers, contact[ed]" customers to ask "questions about" their complaints and to "help" them "draft or revise" their complaints, and "promis[ed]" customers would "obtain some financial recovery by joining a class action lawsuit." *See, e.g.*, J.A. at 56, 62.

| 10 | NEMET CHEVROLET v. CONSUMERAFFAIRS.COM |
|---|---|

We first examine the structure and design of the website argument, which encompasses all the facts pled in the Development Paragraph except for the claim Consumeraffairs.com asked questions and "help[ed] draft or revise her complaint." J.A. at 62. Nemet cites to the Ninth Circuit Court of Appeals' opinion in *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) to support its structure and design of the website arguments. However, we do not find *Roommates.com* persuasive because it is fundamentally distinguishable and the facts pled here do not show Consumeraffairs.com developed the content of the posts by the structure and design of its website.

In *Roommates.com*, the Ninth Circuit considered whether the operator of a website created to match individuals with spare rooms with prospective renters was entitled to § 230 immunity. *See* 521 F.3d at 1161. The website operator, in that case, required users to disclose their sex, family status, and sexual orientation, as well as those of their desired roommate, using a list of pre-determined responses. *See id.* at 1164-65. Unless a prospective user furnished this information, he or she would be unable to utilize the website. Because the website operator had designed its website to develop unlawful content as a condition precedent of use, the Ninth Circuit held that the operator was an information content provider for the discriminatory postings created by third parties. *See id.* at 1166. As a result, the website operator was not entitled to § 230 immunity. *See id.*

Consumeraffairs.com's website differs materially from that at issue in *Roommates.com*. Whereas the website in *Roommates.com* required users to input illegal content as a necessary condition of use, Nemet has merely alleged that Consumeraffairs.com structured its website and its business operations to develop information related to class-action lawsuits. But there is nothing unlawful about developing this type of content; it is a legal undertaking: Federal Rule of Civil Pro-

| NEMET CHEVROLET v. CONSUMERAFFAIRS.COM | 11 |
|---|---|

cedure 23, for instance, specifically provides for class-action suits.

The Ninth Circuit did not hold that a website operator becomes an information content provider because the information posted on its website may be developed in a way unrelated to its initial posting, such as its potential to further a class-action lawsuit. *Roommates.com* merely adopted a definition of "development," for purposes of § 230(f)(3), that includes "materially contributing" to a given piece of information's "alleged unlawfulness." *Id.* at 1167-68; *see also* 47 U.S.C. § 230(f)(3).

The theory of liability adopted in *Roommates.com*, therefore, does not aid the sufficiency of Nemet's amended complaint. As the Ninth Circuit noted, a website operator who does not "encourage illegal content" or "design" its "website to require users to input illegal content" is "immune" under § 230 of the CDA. *Roommates.com*, 521 F.3d at 1175. Even accepting as true all of the facts Nemet pled as to Consumeraffairs.com's liability for the structure and design of its website, the amended complaint "does not show, or even intimate," that Consumeraffairs.com contributed to the allegedly fraudulent nature of the comments at issue. *Iqbal*, 129 S. Ct. at 1952. Thus, as to these claimed facts in the Development Paragraph, Nemet's pleading not only fails to show it is plausible that Consumeraffairs.com is an information content provider, but not that it is even a likely possibility.

We now turn to the remaining factual allegations, common to all twenty posts from the Development Paragraph, that Consumeraffairs.com is an information content provider because it contacted "the consumer to ask questions about the complaint and to help her draft or revise her complaint." *See, e.g.*, J.A. at 62. Nemet fails to make any cognizable argument as to how a website operator who contacts a potential user with questions thus "develops" or "creates" the website content. Assuming it to be true that Consumeraffairs.com con-

tacted the consumers to ask some unknown question, this bare allegation proves nothing as to Nemet's claim Consumeraffairs.com is an information content provider.

The remaining claim, of revising or redrafting the consumer complaint, fares no better. Nemet has not pled what Consumeraffairs.com ostensibly revised or redrafted or how such affected the post. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Nemet's claim of revising or redrafting is both threadbare and conclusory.

Moreover, in view of our decision in *Zeran*, Nemet was required to plead facts to show any alleged drafting or revision by Consumeraffairs.com was something more than a website operator performs as part of its traditional editorial function. *See* 129 F.3d at 330. It has failed to plead any such facts. "Congress enacted § 230's broad immunity 'to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.' 47 U.S.C. § 230(b)(4). In line with this purpose, § 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Id.* at 331.

We thus conclude that the Development Paragraph failed, as a matter of law, to state facts upon which it could be concluded that it was plausible that Consumeraffairs.com was an information content provider. Accordingly as to the Development Paragraph, the district court did not err in granting the Rule 12(b)(6) motion to dismiss because Nemet failed to plead facts sufficient to show Consumeraffairs.com was an information content provider and not covered by CDA immunity.

B. Fabrication of Eight Posts

Even if the facts pled in the Development Paragraph are insufficient for Rule 12(b)(6) purposes, Nemet separately

argues that as to eight of the twenty posts, the amended complaint pled other facts which show Consumeraffairs.com is an information content provider. Thus, Nemet argues the motion to dismiss should not have been granted as to these eight posts.

In the other twelve posts, Nemet agreed that it could identify from its business records the customer making the posted complaint and the vehicle at issue. However, as to the eight posts, Nemet pled as to each that "[b]ased upon the information provided in the post, [Nemet] could not determine which customer, if any, this post pertained to." *See, e.g.*, J.A. at 70. Nemet then pled the following (the "Fabrication Paragraph") as to each of the eight posts:

> "Because Plaintiffs cannot confirm that the [customer] complaint . . . was even created by a Nemet Motors Customer based on the date, model of car, and first name, Plaintiffs believe that the complaint . . . was fabricated by the Defendant for the purpose of attracting other consumer complaints. By authoring the complaint . . . the Defendant was therefore responsible for the substance and content of the complaint."[6]

*See, e.g.*, J.A. at 68. Taking the Fabrication Paragraph as pled, it is important to note exactly what facts Nemet claims show Consumeraffairs.com was the actual author of the eight posts. Nemet's *sole* factual basis for the claim that Consumer

---

[6] Although it appears odd, to say the least, that as to these eight posts Nemet pled in the Development Paragraph that Consumeraffairs.com steered the customer to make a false complaint by manipulation of the website and then contacting the consumer to revise and redraft the complaint, and *at the same time* also pleads in the Fabrication Paragraph that Consumeraffairs.com simply fabricated the entire post, we will assume Nemet is pleading in the alternative. Consumeraffairs.com raised no objection to the seemingly contradictory factual allegations and the district court considered none.

affairs.com is the author, and thus an information content provider not entitled to CDA immunity, is that Nemet cannot find the customer in *its* records based on the information in the post.

Because Nemet was unable to identify the authors of these comments based on "the date, model of car, and first name" recorded online, Nemet alleges that these comments were "fabricated" by Consumeraffairs.com "for the purpose of attracting other consumer complaints." *Id.* But this is pure speculation and a conclusory allegation of an element of the immunity claim ("creation . . . of information"). 47 U.S.C. § 230(f)(3). Nemet has not pled that Consumeraffairs.com created the allegedly defamatory eight posts based on any tangible fact, but *solely* because it (Nemet) can't find a similar name or vehicle of the time period in Nemet's business records. Of course, the post could be anonymous, falsified by the consumer, or simply missed by Nemet. There is nothing but Nemet's speculation which pleads Consumeraffairs.com's role as an actual author in the Fabrication Paragraph.

On appeal, Nemet argues that its supporting allegations nonetheless show the Fabrication Paragraph pleads adequate facts that Consumeraffairs.com is the author of the eight posts, but each is meritless. These allegations include (1) that Nemet has an excellent professional reputation, (2) none of the consumer complaints at issue have been reported to or acted upon by the New York City Department of Consumer Affairs, (3) Consumeraffairs.com's sole source of income is advertising and this advertising is tied to its webpage content, and (4) some of the posts on Consumeraffairs.com's website appeared online after their listed creation date. Nemet's allegations in this regard do not allow us to draw any reasonable inferences that would aid the sufficiency of its amended complaint.

That Nemet may have an overall excellent professional reputation, earned in part from a paucity of complaints reported

to New York City's Department of Consumer Affairs, does not allow us to reasonably infer that the particular instances of consumer dissatisfaction alleged on Consumeraffairs.com's website are false. Furthermore, Nemet's allegations in regard to the source of Consumeraffairs.com's revenue stream are irrelevant, as we have already established that Consumer affairs.com's development of class-action lawsuits does not render it an information content provider with respect to the allegedly defamatory content of the posts at issue. Finally, the fact that some of these comments appeared on Consumer affairs.com's website after their listed creation date does not reasonably suggest that they were fabricated by Consumer affairs.com. Any number of reasons could cause such a delay, including Consumeraffairs.com's review for inappropriate content. *See Iqbal*, 129 S. Ct. at 1951.

We are thus left with bare assertions "devoid of further factual enhancement," which are not entitled to an assumption of truth.[7] *Id.* at 1949. Such conclusory statements are insufficient as a matter of law to demonstrate Nemet's entitlement to relief. *See id.* As recently emphasized by the Supreme Court, Rule 8 requires "more than conclusions" to "unlock the doors of discovery for a plaintiff." *Id.* at 1950. Viewed in the correct "factual context," *id.* at 1954, Nemet's stark allegations are

---

[7]Nemet's amended complaint alleges that several comments Consumeraffairs.com overtly created and posted on its website also support its claims for defamation and tortious interference with a business expectancy. In these statements, Consumeraffairs.com provides commentary on the complaints posted on its website, noting that "some of Nemet's customers aren't so impressed" with Nemet's services and opining that these complaints "pretty well cover the territory" of things that "can go wrong when buying a car." J.A. at 55. Consumeraffairs.com also questioned whether Nemet knew that "if a dealer advertis[es] a car at a certain price, it is obligated to honor that price unless it has clearly disclosed that the price applies only under certain conditions." *Id.* at 56. Because Nemet failed to argue in its opening brief that these comments contributed to the sufficiency of its amended complaint, we will not consider them in this appeal. *See Cavallo v. Star Enter.*, 100 F.3d 1151, 1152 n.2 (4th Cir. 1996).

nothing more than a "formulaic recitation" of one of the elements of its claims. *Id.* at 1951. A plaintiff must offer more than "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements," however, to show its entitlement to relief. *Id.* at 1949.

Viewed in their best light, Nemet's well-pled allegations allow us to infer no more than "the mere possibility" that Consumeraffairs.com was responsible for the creation or development of the allegedly defamatory content at issue. *Id.* at 1950. Nemet has thus failed to nudge its claims that Consumeraffairs.com is an information content provider for any of the twenty posts across the line from the "conceivable to plausible." *Id.* at 1952. As a result, Consumeraffairs.com is entitled to § 230 immunity and the district court did not err by granting the motion to dismiss.

V.

For the above-stated reasons, we affirm the judgment of the district court.

*AFFIRMED*

JONES, Chief District Judge, concurring in part and dissenting in part:

I agree with my colleagues that as to the twelve posts that Nemet connected to real customers, the Amended Complaint fails to sufficiently plead a cause of action. The facts alleged do not show that as to these posts it is plausible that Consumeraffairs.com is an information content provider within the meaning of the Communications Decency Act.

However, as to the remaining eight posts involving fictitious customers, which Nemet claims the website itself fabricated in order to attract other consumer complaints, I disagree and must respectfully dissent.

| NEMET CHEVROLET v. CONSUMERAFFAIRS.COM | 17 |
|---|---|

The majority opinion correctly sets forth the relevant legal framework. The Communications Decency Act offers website providers a limited form of immunity from civil lawsuits. Specifically, the act provides that an "interactive computer service," or website host, may not be liable under state law for website content posted by a third party. 47 U.S.C.A. § 230(c), (e)(3) (West 2001); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). A website host loses its immunity under § 230, however, if it is responsible, "in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C.A. § 230(f) (3) (West 2001).

In addition, as the majority opinion points out, the current federal pleading standards mean that in order to pass muster a claim must be "'plausible on its face,'" which in turn requires that a complaint's facts create more than the "sheer possibility" of a defendant's liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This means in the context of § 230 that in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Nemet's complaint must contain sufficient factual allegations to allow for the plausible conclusion that Consumeraffairs.com was responsible, in whole or in part, for the creation of the Internet posts in question.

In disagreement with the majority, I believe that the allegations of the Amended Complaint adequately set forth a claim that Consumeraffairs.com was responsible for the eight posts from fictitious customers.

In the first place, we are required to accept as true, at least at this stage of the case, Nemet's allegation that these eight posts did not represent real customers. Nemet alleged that it documented each vehicle sale with forms that give the customer's full name, address, description of the vehicle sold,

and the date of sale, as well as other information. Each of the eight posts described in the Amended Complaint gave the first name and hometown of the putative customer as well as the make and model of the vehicle sold by Nemet. All of the posts were dated and all but one set forth the alleged date of the sale. In spite of Nemet's careful documentation of each sale and comparison with the information provided in the posts, Nemet was unable to connect any of these posted complaints with a real transaction.

Moreover, these were not the sole pertinent factual allegations. Nemet also alleged the following in its Amended Complaint:

(1) The eight complaints at issue were never reported to the New York City Department of Consumer Affairs, which, according to Nemet, is responsible for policing consumer issues where Nemet does business, and which has recently pursued highly publicized consumer litigation against other car dealers. (Am. Compl. ¶¶ 12-14, J.A. 49.);

(2) Consumeraffairs.com's website encourages consumers to complete complaint forms, but the website does not contain a place for positive reviews. (Am. Compl. ¶ 28, J.A. 53.);

(3) The website "entices visitors with the possibility of participating in a class-action lawsuit, with the potential for a monetary recovery," by promising to have "class action attorneys" review all submitted complaints. (Am. Compl. ¶ 29, J.A. 53.);

(4) Consumeraffairs.com earns revenue by selling ads tied to its webpage content, including the content posted by consumers. (Am. Compl. ¶¶ 21, 22, J.A. 51.);

(5) Consumeraffairs.com wrote derogatory statements about Nemet on the website in connection with the alleged consumer complaints, such as the following:

> Here's what Nemet says about itself on its Web site: "The Nemet Auto Group is an automotive marketing organization led by the Nemet family since 1916. For 86 years, the Nemet family has represented many of the world's largest and most prestigious automobile manufacturers selling well over half a million cars internationally."
>
> Sounds great, but some of Nemet's customers aren't so impressed, as the complaints in this section indicate. A selection of assorted recent complaints appears below, while categorized beefs are listed to the right.
>
> . . . .
>
> ...The Nemet complaints pretty well cover the territory — everything from *prices* engraved in sand to *advertising* that overlooks certain crucial elements. It's also interesting to see how Nemet responds when consumers take the trouble to drag them into *court*.
>
> . . . .
>
> ...[I]f a *dealer* advertisers a car at a certain price, it is obligated to honor that price unless it has clearly disclosed that the price applies only under certain conditions. Does Nemet know this?

(Am. Compl. ¶¶ 33-35, J.A. 54-56.).

While *Twombly* and *Iqbal* announced a new, stricter pleading standard, they did not merge the pleading requirements of Rule 8 with the burden of proof required for summary judgment. In fact, the Court in *Twombly* stated that "[a]sking for plausible grounds to infer" a claim's existence "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. The plausibility standard "simply

calls for enough fact to raise a reasonable expectation that discovery" will lead to information supporting the plaintiff's claim. *Id.* Nemet's pleading accomplishes this. By stating sufficient factual assertions, Nemet has created the reasonable inference that Consumeraffairs.com wrote the eight posts to attract additional complaints.

It is true that there may be alternative explanations for these posts that show that they are not attributable to Consumeraffairs.com. Nemet may have simply overlooked eight actual customers in its review of the company sales documents. The fictitious posts may have come from mischief makers unrelated to Consumeraffairs.com, or from real consumers who wished to remain anonymous by falsifying the details of their transactions. But I don't believe that any of these alternatives are any more plausible than Nemet's claim.

It cannot be the rule that the existence of any other plausible explanation that points away from liability bars the claim. Otherwise, there would be few cases that could make it past the pleading stage. Indeed, as *Iqbal* teaches, it is only where there are "more likely explanations" for the result that the plausibility of the claim is justifiably suspect. *Iqbal*, 129 S. Ct. at 1951.

While the present federal pleading regime is a significant change from the past, it remains true that a plaintiff in federal court need not allege in its initial pleading all of the facts that will allow it to obtain relief. Otherwise, the summary judgment process under Rule 56 would have little meaning. Of course, I don't know whether Nemet could have ultimately prevailed on its claim that Consumeraffairs.com made up the eight posts in question, or even if it could have withstood a motion for summary judgment, but under the circumstances it ought to have been allowed to attempt to prove its case. For that reason, I respectfully dissent.